Good morning, sir. You may proceed. Thank you. May it please the court, I realize you're probably familiar with the facts, but just briefly, this involves a orthopedic surgery to clean up some scar tissue on my client, Leslie Grussing, on June 26, 2014. About 10 days later, she awoke with a sudden onset of severe swelling and pain, which is an indication of a possible infection. Three days later, she showed up for her first follow-up visit. At that time, she advised Dr. Salmon's physician assistant, Jason Gay, of the swelling of the sudden onset of pain. He didn't record that in his records. She returned at the suggestion of her physical therapist to Dr. Salmon on July 18, because the physical therapist was unable to perform physical therapy due to the level of swelling and pain. At that time, Dr. Salmon aspirated or inserted a needle and drew fluid off of Leslie Grussing's knee. He looked at the fluid, determined from a visual inspection that it didn't appear to be infected, and discarded it. This case is about that aspiration. The who, the what, the when, the where, and what should have been done with that fluid was the case. That was the issue that was submitted as the negligence to the jury. After that July 18 aspiration, she went on at Dr. Salmon's instructions for months of aggressive physical therapy. She continued to decline, and then on October 13, she ended up getting a second opinion. As a result of that second opinion, more fluid was drawn. A chronic, meaning more than six weeks long, infection was diagnosed as a result of that second aspiration. This was a rampant infection at that time. Because of that delay, the only option then was to physically remove her knee. This is a 40-something-year-old woman who had a total knee replacement. In fact, what had to be done was a two-stage total knee, where they remove the knee, insert an antibiotic-infused spacer for a period of months, put the patient on IV antibiotics until the severe infection is cured, and then do a total knee replacement. Had the aspirant been tested and the infection diagnosed, and everyone agrees that the infection was seated, you'll see on the transcript it keeps seated, but the medical term is seated, in the knee on the June 26 surgery. Had it been done at that point, the medical option would have been to open the knee, wash it out, thus removing it, and prevent the need for a total knee replacement in her early 40s. Two issues in this case. One is the closing argument by defense counsel. Defense counsel stated, talking about burden of proof, if you are just sitting there and you are not sure, then the law requires that you find in favor of defendants. I objected. The court did nothing in response to that objection. There was no corrective action taken. What the court says in his own ruling on my motion for new trial was not that he instructed the jury to follow the instructions, but that he instructed defense counsel to follow instructions. That's not a corrective action. In fact, then the defense counsel... Well, hold on. The judge instructed this jury that what the lawyers had to say was not the law of the case, that it was the court's job to instruct on the law. There was a discussion about what the appropriate burden of proof was, starting actually from the very beginning of the case. Why is this not something that's covered by the instructions generally? Your Honor, the burden of proof is the lens through which a jury views everything. Negligence, causation, injury, damages, everything is viewed through the burden of proof. The burden of proof is the most basic thing that the jury has to understand. The defense counsel blatantly misstated the burden of proof. That is not the civil burden of proof. In fact, the burden of proof that the defense counsel argued was greater than beyond a reasonable doubt. Sure means, by dictionary definition, having no doubt. So that was an incorrect statement of the burden of proof is deemed in every case prejudicial error, and it is deemed reversible error to not correct that. What Judge Shaw should have done was tell the jury, no, that is not the burden of proof. I have given you the burden of proof. That is an incorrect statement of it. That was not done. The exchange goes on to then talk about, oh, yes, more likely than not. As I read that, and as I interpreted the time, it was in effect equating more likely than not with what Mr. Ellington had just said. You must be sure, and if you're not, the law requires you find for defendant. There is the issue here of whether more likely than not is an adequate, is an equivalent statement of the burden of proof. I think that is a correct statement of the burden, but what he's doing is equating what he just said with more likely than not. What's your argument about that? Because I'm having some difficulty with that. I read the exchange. The defense attorney called the defense attorney on his misstatement. The court said, follow the instructions. Then the defense attorney says, the court will give you the burden of proof. What that is, more likely than not. The court says it's in the instructions. But no one disclaims what he had just said. No one says, you're right. What I just said is not more likely than not. I read that and interpreted it at the time live as equating the two. The more likely than not, that's what I just said. Yes, your honor, that's what I just said. More likely than not. That's how that came across. That's how I read it. There is no corrective instruction. There is nothing by defense counsel saying you're right. That is an incorrect statement of the burden of proof. Was the instruction about burden of proof read to the jury? Yes, your honor. Both at the beginning and the end of the trial? Yes, your honor, it was. So we have a situation where the instruction, the proper instruction is given at the beginning and the end. It's covered in void dire by the plaintiff's attorney. And there's an effort made to correct here when this misstatement is made. But in the face of all of that, because of this one statement of defense attorney, a new trial is warranted. Is that the position? Your honor, under Missouri law, in a diversity case, yes. That misstatement of the law, it is so fundamental. And the fact that the judge, Judge Shaw, did not sustain the objection, as the court said in the Van Skyke case, that it is in effect by not sustaining the objection, it is telling the jury that what was just said was correct. So yes, your honor, that single misstatement. And it's such a fundamental, blatant misstatement of the burden of proof. You're putting on the plaintiff then a burden beyond what the state would be in any criminal prosecution. That's not the law. The other issue before the court, your honor, is the reason why I gave the brief recitation of the facts on the cross-examination of defense counsel's expert witness. The court halted our cross-examination, sua sponte in effect, on the issue of what should have been done with the fluid. The question that we asked that had not been asked to the defense counsel's expert witness was, isn't it true, some form of, isn't it true that normal appearing synovial fluid can be infected? The objection was that that was effectively asked and answered. It was not. I then reminded the court, this is the heart of the case. And that was the negligence instruction that was given was solely on that issue. And the court basically says, yeah, you're going to stop. You're not going to ask any more questions on this. You're done with this. Cut that entire line of questioning off. That goes beyond the trial court's latitude to control cross-examination. That was the central issue in the case. And we were not allowed to cross-examine their sole expert witness on that reason. And the argument, I would ask the court to remand this for a new trial. And I'll reserve, if it's all right with you, the rest of my time. You may do so. Thank you. Thank you, Your Honor. Mr. Ward, good morning. You may proceed. Good morning, Your Honor. May it please the court. My name is Mike Ward. I'm present this morning on behalf of the Appellee's Orthopedic Sports and Medicine and Dr. Corey Salmon. We request the court to affirm the district court's judgment for the defendants. The first argument raised by the appellant is during closing argument, the burden of proof. There was no confusion at all concerning the burden of proof at trial. The question of control over closing argument was vested in the exclusive province of the district court, Judge Shaw. Judge Shaw, in his order denying plaintiff's motion for a new trial, outlined the whole history of the discussion of the burden of proof at trial, beginning with Vordaer in closing argument. Plaintiff's counsel during Vordaer went over the burden of proof quite explained it to the jury in terms of tipping the scales, more likely right than wrong, 51-49 percent and so forth. The instruction, the burden of proof instruction, instruction number five was read at the beginning of the trial and at the conclusion of the trial. That instruction read, the burden upon the party who relies upon any such proposition to cause you to believe that such proposition is more likely to be true than not true. Mr. Ellington, who was defense counsel at trial, did say that, in his argument, that if the jury is not sure that they should return a verdict for the defendants, that was in conjunction in the context of discussing the court's instructions. Immediately following, as Judge Shepard noted, immediately following plaintiff's objection, Judge Shaw said, follow the instructions. Mr. Ellington then said, the court will give the jury the instructions and the burden is more likely true than not. And then at the conclusion, and so that was discussed, there was simply no confusion to the jury. There was no suggestion that the jury was beyond, was subject to be bound to determine the evidence according to the reasonable doubt standard in a criminal case. The civil standard was replete throughout the trial of the case, beginning with Vordaer. Plaintiff's extensive discussion of that issue to the jury during Vordaer. Let's get to the issue. Do you concede that the statement that was made was an incorrect statement of law? I believe, in the context of the argument, I don't believe so. I don't think it was any intent to mislead or confuse the jury. Whether it was or not, if it's a misstatement, it's a misstatement. You might have made it in good faith. I don't know if you argued the case. No, Your Honor, I did. My partner, Dave Ellington, was the trial counsel. Strictly speaking, the comment, not sure, Your Honor, would not comport with the burden of proof. But also in the context of the argument as a whole, plaintiff's counsel, during his argument, spoke in terms of doubt. If you have any doubt, you can still return a verdict for the plaintiff. The law permits the trial court, the district court, broad discretion over the control over closing argument. Minor aberrations that aren't emphasized to the jury do not rise to the level of prejudicial error. Judge Shaw was in the best to evaluate, to review the entire proceedings. And based on the whole history throughout the course of the case, the course of the trial, the discussion of the burden of proof, Judge Shaw, within his discretion and review of the whole trial record, concluded there was no prejudice, there was no harm. And also, quite clearly in terms of the record, that an admonition followed by a correct statement of the burden of proof cures any error. In this case, after the not sure comment, Judge Shaw, in open court, advises counsel, and also for the hearing of the jury, follow the instructions. And then thereafter, Mr. Ellington says yes, and the court will give you the burden of proof, what that is, more likely than not. There simply, in the context of the trial as a whole, your honor, there was no confusion concerning the burden of proof in the civil case, especially in the context of the court's instruction number five, which laid out the appropriate civil standard. Plaintiff's counsel argues that this was an extremely heinous, extremely prejudicial argument, and cites Missouri law, Missouri common law, concerning the control of oral argument. This matter, as a procedural matter, is governed by federal law, the federal cases that govern the control of the closing argument. But I would if Missouri law were to control this case, the Missouri Supreme Court's decision in Manley versus Wharton, which is cited in our brief, would compel affirmance of the trial court's judgment, the district court's judgment. In Manley, the Missouri Supreme Court held that an admonition followed by a correct statement of the law cures any error in closing argument. And under that standard here, we again have the comment made, the not sure comment, followed by Judge Shaw's follow the instructions, and then followed by the correction by defense counsel concerning the burden of proof. In that context, I directly, respectfully submit to the court that Judge Shaw was within his discretion, and how he handled the closing argument was within his province to do so, that there was no prejudice, there was no confusion. And if there had been any confusion, any concern over the burden of proof, plaintiff's counsel could have spoken in his reply argument to clarify the burden of proof. Review of his rebuttal argument, the final portion of it shows no discussion of the burden of proof. If this had been so damaging, so destructive to plaintiff's case, such an aberrant discussion of the burden of proof, it would have been cleaned up, it would have been addressed in plaintiff's rebuttal argument. You know, as I look at the transcript, it's, you know, it goes like this. It says, but if you're just sitting there and you're not sure, then the law requires that you find in favor of the defendants. Then there are a few other instructions, one of them, then there's an objection. The objection is, your honor, this is a misstatement of the law, not sure. The court says, counsel. Mr. Ellington then attempts to respond to the court's non-invitation to discuss it, and says, your honor, and the court cuts him off in mid-sentence and says, follow the instructions. Now that sounds a like an objection that's been sustained and cut off at the knees. Now, you know, I can't really tell because I can't tell the exact context of how that conversation took place, but I presume that you have spoken to Mr. Ellington, and I'm just curious as to what was the tone and tenor of that discussion? Because the record, I think, in the light most favorable to the verdict would tend to look like, you know, the judge has, in fact, cut off that line of argument and said, stop it. You know, now, I mean, maybe there's some magic in saying the word sustained, but, you know, I've been a trial judge for 24 years, and I can tell you that from time to time that the magic words don't get said. And so I'm trying to just sort out what was this perceived as, as it took place, at least from your partner's perspective. Your honor, I first put in the does not approach the handling of the trial with kid gloves. And in the context of this, Judge Shaw, I think would be a fair statement based on my discussions with Dave Ellington, and also my experience with Judge Shaw, that when Judge Shaw said counsel, he was, it was tantamount to sustaining an objection that Judge Shaw is a very strong trial judge. He permits no nonsense in his courtroom. He runs a very tight ship. And based on my sense in speaking with Mr. Ellington, and also my experience over the years being before Judge Shaw, that Judge Shaw was reining the argument in. It wasn't permitting any further explanation. And then the follow of the instructions was tantamount to an admonition to follow the instructions. And then the correction occurred where Mr. Ellington said, yes, the court's going to give the jury the instructions and the standard that the burden of proof is more likely than not. And so there you have, you have the court having control over the closing argument. The court, whether you characterize it as an objection sustained or an admonition, it's clear that the trial Judge took, Judge Shaw took control over the, over that part of the trial. And then there was followed by a correction as to what the, what the proper burden of proof was. And in that context, there's simply no basis to conclude that Judge Shaw abused his discretion in the control over closing argument, that there's no basis to conclude that the trial, that the trial was prejudiced by this one single comment, especially when you go through the whole discussion with respect to the burden of proof, beginning with Vardyar in the reading of the instructions, both at the beginning of trial, at the end of the trial, that anyone was confused about the burden of proof, that the more likely than not standard that controls civil cases was the cross-examination of the defense expert, Dr. Matava. Plaintiff's counsel sought to question Dr. Matava on whether or not an infection can be seen from clear fluid, synovial fluid. That question drew an objection, which was sustained by Judge Shaw. That was an undisputed point in the trial. Plaintiff's reading, playing the video deposition of Dr. Salmon, in which Dr. Salmon admitted that clear fluid can show signs of infection. Also on cross-examination of Dr. Salmon and also his position as assistant, Jason Gay, both gentlemen testified that although it's not probable, it's possible that clear fluid may evidence an infection. And Judge Shaw, with his discretion, his control over cross-examination, limited Plaintiff's cross-examination on a point that was repetitive, that had been addressed previously, that was undisputed in the case, that clear fluid can show a sign of infection. Where was it? Your Honor? The objection was repetitious. Yes. So, of course, I understand you weren't trying the case. No, Your Honor, I was not. At this point. But is it your understanding that that objection as to repetition is within the context of the cross-examination, that the question had already been asked on cross-examination? There had been this Plaintiff's counsel focused on the fluid throughout the trial. It was a constant theme and also ultimately what was submitted as in the verdict directing instruction that whether or not that on July 18th, 2014, Dr. Salmon should have cultured or counted. Well, I understand that, but let me ask it another way. Before this little exchange, had the same question been asked and answered by the witness or had the same factual issue been covered by that particular witness? It had not been covered particularly by Dr. Mataba, Your Honor. It had not been a repeated question of Dr. Mataba. Well, then how could an objection of repetition in any way be an appropriate objection there? Your Honor, because the question that was asked and the answer was undisputed in the evidence at trial. Hold on, wait a minute. That's a different objection. That's cumulative, not repetitive. And you know, here's the real problem with this case is that you say that Dr. Salmon conceded that clear synovial fluid might be infected, but that's a very different story than having the defendant's expert testify that clear synovial fluid might be infected. And it's very, you know, it's not a question where some other defense expert has said it. It's not another, you know, and so what you leave here is just this defense view uncontroverted by the defendant when we know based on the deposition that if allowed to answer the question, he would have said that yes, clear synovial fluid could be infected, right? And there's no basis for this objection at all, as far as I can tell. Now, if I'm wrong, tell me why. I can only speak in terms of my discussion with Dave Ellington concerning what was on his mind when he raised the objection that there was an undisputed fact that Dr. Salmon had testified at the beginning of Plaintiff's case when his testimony was played to the jury. But that's not repetitive. It's the wrong, perhaps the wrong terminology was used, Your Honor. But what's the, okay, tell me what the right terminology is for that objection. It was undisputed fact. It would have been accumulative evidence, but more fundamentally, regardless of what the nature of the objection, there was... Why didn't the lawyer say admitted? Pardon? Why didn't the lawyer say admitted? Let's, Your Honor, let's move on. We've admitted this. I can't... Wouldn't that be the more... If this is what you're getting at, that it wasn't in dispute, it had already been acknowledged, admitted, conceded. That's not an issue, really an issue in dispute. Wouldn't that have been... Isn't that really what happened here? Judge Shepard, based on my... I can only... It's not a record, and I can only relate what's been this... What I've discussed with Dave Ellington. That was on his mind, that it was an undisputed issue, that it was... Had been previously addressed. He used the wrong, the wrong words, but... Do we... Do we require people to stipulate away their ability to cross-examine expert witnesses? I mean, I've never seen that in any case I've tried, either as a lawyer or presided over as a judge. I agree with you, Your Honor. That is correct. There is nothing... You can't stipulate away another party's case, but more fundamentally, regardless if the evidence is not harmless, because it was already before the jury, before, twice before Judge Solomon testimony, Dr. Solomon's testimony, also the physician's assistant, plaintiff failed to make an offer of proof. If Dr. Mataba's testimony would have been different than what had been communicated in the testimony by Dr. Solomon twice at trial, and also the physician's assistant, it was incumbent upon the plaintiff to make an offer of proof to advise what Dr. Mataba would have said. Plaintiff, in his brief, reply brief, excuses the failure to make an offer of proof because it was self-evident what Dr. Mataba would have said based on the testimony of Dr. Solomon and the physician's assistant. But if it would have been materially different than what they had testified and would have been meaningful to the plaintiff's case, it was incumbent upon the plaintiff to make an offer of proof. And that failure to make an offer of proof waves the plaintiff's point on this point, that if they're truly... I see that I'm out of time, but if... You may complete your brief. If this answer to this question was truly germane, it was incumbent upon plaintiff to make an offer of proof what Dr. Mataba would have said that would have made a difference in the case, and that there was no offer of proof made. And for those reasons, Your Honors, I respectfully request the court to affirm the district court's judgment for the appellees. Thank you. Very well. May it please the court. Mr. Hendrickson, you may proceed. Your Honors, going on to the point just raised, what's key is Dr. Mataba was the very first defense witness called. The very first thing done at trial was to play Dr. Solomon's video deposition, where in the course of, I think we played about 45 minutes or an hour of his deposition, he made the admission about the fluid that perfectly clear fluid could be infected. In fact, the reason why you test even perfectly clear fluid is because you're trying to catch the infection before it gets to the point where it's green pus and you're beyond being able to do the other care about it. This was the very first witness. This was absolutely not asked and answered. It was not repetitive in any way of this question. And beyond that, Judge Shaw then cut me off from asking anything else. Now, I don't have to ask anybody else what was going on in this trial. I was there. Judge Shaw cut me off, did not allow me by his own statement here, anything else about the fluid. In fact, you'll see later on the transcript that he calls me up and says in a sidebar, you're beating this to death about the fluid. You can read the transcript and make that determination for yourself. But quite honestly, this was not, Judge Shepard, this was not something that they were admitting. In fact, when they then called Dr. Salmon and his physician assistant, Jason Gay, and that question is asked of them, they say, well, it's possible, but not probable. That's a change in Dr. Salmon's testimony in this deposition. So they were clearly not admitting the fact that clear fluid can test positive for infection. They were saying, well, it's possible, but it's not probable. So they had changed from the admission made in Dr. Salmon's deposition. Going on from the point made by counsel a moment ago, how do we know what this witness, this expert, how do we know what he would have said? Dr. Matava's deposition, all portions of it were and they're part of the record. And Judge Shaw, from his, by the fact that he's saying you're going on and on about this, you've beaten this to death. And in fact, we hadn't even begun to beat it to death. And his perception was that the context was clear. If the objection is this is repetitious, then the context is clear. I don't think that a, in under rule 103 A2, if it's apparent from the context where we were going with this, a offer of proof was not necessary. But beyond that, Dr. Matava's deposition was already designated and was already part of the record and gave that. So the jury had had it? No, the jury did not have it at that point. Judge Shaw had it. Yes. And was it just, just offered like just kind of in bulk or were there particular excerpts? We designated specific excerpts, Your Honor. So if we go back to the record, is that, can we find where he would, where, where he would have answered this particular question? Yes, I believe that I included that in the supplemental addendum specifically, the, the designation. If I did not, it is contained in Dr. Matava's deposition. That's part of the record. What, what did you make of this comment? Because frankly, I don't quite get it. Uh, that quote, the lady didn't protest too much, uh, which he said twice, Judge Shaw did. And then he came up with, uh, uh, the final command, okay, figure it out. Um, and clearly there's something here that you were supposed to be figuring out. Um, and I, I can't figure it out from the transcript. Do you have a clue? Your Honor, as Mr. Ward said, Judge Shaw does not run a courtroom with kid gloves. Um, and, and sometimes you're slept and you don't quite know why. I don't know. I did not agree with him. I was surprised that he felt like we were beating this to death or that the lady doth protest too much. I think he was doing Shakespeare and that I was the lady in, in the scenario. Um, but the fact is the only submission of negligence to the jury was, was it negligence not to culture and cell count the synovial fluid drawn on June, uh, July 18th, 2014. That was the specific one. So to say that we were going on and on about the who, the what, the when, the where about the fluid, when that was the only issue of the trial. I don't understand. I'm at a loss to understand where he was going with that judge. Okay. Thank you, Your Honor. Very well. The case is submitted and we will take it under consideration. Thank you.